Melvin Eugene JENKINS, Appellant,

v.

The UNITED STATES of America, Appellee.

No. 76–1662.

United States Court of Appeals, Fourth Circuit.

Submitted Jan. 26, 1977.

Decided May 31, 1977.

Melvin Eugene Jenkins, appellant, pro se.

Jervis S. Finney, U. S. Atty., Baltimore, Md., for the appellee.

Before WINTER, CRAVEN and BUTZNER, Circuit Judges.

WINTER, Circuit Judge:

Melvin Eugene Jenkins moved to vacate his sentence under 28 U.S.C. § 2255 on the ground that it was improper because the district court had not entered an express "no-benefit" finding as required for certain criminal defendants by the Youth Corrections Act. *Dorszynski v. United States,* 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974). The district court denied the motion on the ground that although Jenkins was twenty-one years old on the date of his conviction, he was twenty-two years old at the time sentence was imposed. Jenkins appealed.

Jenkins' argument is that his age at the time the verdict of guilty was returned should be controlling for the purposes of the Act, rather than his age at the time of sentencing. The Act defines a "youth offender" as "a person under the age of twenty-two years at the time of conviction", and defines "conviction" as "the judgment on a verdict or a finding of guilty, a plea of guilty, or a plea of nolo contendere." 18 U.S.C. § 5006(d), (g) (1976). Nothing in the record refutes Jenkins' contention that he was twenty-one years old at the time of his conviction on June 10, 1971. He acknowledges that he was twenty-two years old at the time sentence was imposed on August 31, 1971.

It is, of course, true that, read literally, § 5006 may be interpreted to mean that a youth offender, eligible for treatment under the Act, must not be twenty-two or older at the time of sentencing, since it is generally held that in a criminal case the sentence is the judgment. *Korematsu v. United States,* 319 U.S. 432, 434, 63 S.Ct. 1124, 87 L.Ed. 1497 (1943); *Berman v. United States,* 302 U.S. 211, 212, 58 S.Ct. 164, 82 L.Ed. 204 (1937). The legislative history of the Act discloses, however, that Congress employed the terms "conviction" and "sentence" as articulating two distinct concepts. Thus, Senate Report No. 1180 (October 17, 1949), and House Report No. 2979 (August 22, 1950), [1950] U.S.Code Cong. Service 3983, 3985, in analyzing the bill, state:

> If the court finds that a *convicted person* is a youth offender and the offense is punishable by imprisonment, it may, in lieu of the penalty of imprisonment otherwise provided by law, *sentence* the youth offender for treatment and supervision until discharged by the Division as provided in section 5017(c) of the bill (emphasis supplied).

Appended to the reports is a letter of the then Deputy Attorney General which contains this significant paragraph:

> The measure would define a youth offender as a person under the age of 22 years who has been *convicted* of an offense against the United States. While it would not deprive the court of any of its present functions as to sentencing, the bill would provide that, *upon conviction,*

the court may place the youth offender on probation, proceed under the Juvenile Delinquency Act, *or sentence* under any applicable provision of law relating to the offense. The court would be authorized, however, in lieu of any penalty of imprisonment otherwise provided by law, to sentence a youth offender to the custody of the Attorney General for treatment and supervision. If, before pronouncing sentence, the court should desire additional information as to whether the youth offender would derive benefit from the treatment contemplated under the proposal, it may commit the youth to the custody of the Attorney General for observation and study and a report back to the court. (Emphasis supplied.)

[1950] U.S.Code Cong.Service 3983, 3991.

Thus, it may be fairly said that the Congress treated the pronouncement of guilt, whether determined by plea or verdict, and the sentence thereafter imposed as two separate and distinct steps in the disposition of a criminal case. This is not an unusual classification or progression of concepts, notwithstanding *Korematsu* and *Berman*. The same dichotomy of thought is found in 18 U.S.C. § 4216, dealing with young adult offenders, where it is provided that if a defendant is over twenty-two but under twenty-six *"at the time of conviction"* (emphasis added), and the district court finds that he would benefit from the treatment found under the Federal Youth Corrections Act, *"sentence may be imposed* pursuant to the [Act]"* (emphasis added). Indeed, the evident legislative intent that there be correlation between the Youth Corrections Act and the Young Adult Offenders Act strongly suggests that the cutoff date for application of the former must be the defendant's age at the time that guilt is pronounced, and not when sentence is imposed, since the latter must be given this reading, *Standley v. United States*, 318 F.2d 700 (9 Cir. 1963),

*cert. denied*, 376 U.S. 917, 84 S.Ct. 673, 11 L.Ed.2d 613 (1964), *rehearing denied*, 376 U.S. 967, 84 S.Ct. 1126, 11 L.Ed.2d 984 (1964), and otherwise, correlation between the two acts would be lost. We note also that Rule 32(c)(1) F.R.Crim.P., in dealing with the district court's consideration of a presentence report and its disclosure, specifies that, absent a defendant's written consent, the report should not be examined or disclosed "unless the defendant has pleaded guilty or nolo contendere or *has been found guilty* . . ." (emphasis added). Once again, the concepts of a judgment of guilt and of sentence are separated.

■ The legislative history, the need for correlation with the Young Adult Offenders Act, other usages and the remedial purposes of the Youth Corrections Act lead us to agree with the Court of Appeals for the District of Columbia Circuit that the time of "conviction" is the time the verdict is returned for the purposes of determining whether the defendant qualifies as a "youth offender." *United States v. Branic*, 162 U.S.App.D.C. 10, 495 F.2d 1066, 1070 (1974), *adopting United States v. Carter*, 225 F.Supp. 566 (D.D.C.1964). See also *United States v. Kleinzahler*, 306 F.Supp. 311 (E.D. N.Y.1969).*

■ Accordingly, the judgment of the district court is reversed and the cause remanded. If review of the transcript of sentencing (which is not included in this record) discloses that there was no "no-benefit" finding at Jenkins' sentencing, Jenkins' motion should be granted and he should be resentenced after giving consideration to the Youth Corrections Act. The record for such sentencing should be reopened so that the court may take into consideration Jenkins' conduct since the initial sentencing. *McCray v. United States*, 542 F.2d 1246 (4 Cir. 1976).

*REVERSED AND REMANDED.*

---

* This court's opinion in *United States v. Bailey*, 509 F.2d 881, 883 n. 1 (4 Cir. 1975), is not determinative. In that case the defendants were sentenced on the same day that the verdict was returned. While we said that defendant Brown "was 22 years of age at the time sentence was passed upon him and hence not within the mandates of the Youth Corrections Act", we said, with regard to defendants Bailey, Morrow and Wallace, "[e]ach of these three, however, was under 22 years of age at the time of conviction and so were eligible for consideration under the Federal Youth Corrections Act . . ." 509 F.2d at 883.

## ADDENDUM

After the foregoing opinion was circulated to the court, a judge suggested reconsideration in banc and requested a poll thereon. A majority of the judges eligible to vote voted to deny reconsideration in banc.

ALBERT V. BRYAN, Senior Circuit Judge, disagreeing:

This statement is made by way of disagreement with the panel decision reversing the District Court and also with the failure of the Court to grant a rehearing in banc.*

The error, for me, is the present determination that "conviction", as used in the Youth Corrections Act, means not the judgment of the trial court, but the verdict or finding of guilty, a plea of guilty or a plea of nolo contendere. This holding squarely contravenes the Act itself, the Supreme Court's definitions and our prior rulings. Incidentally, it equates the jury's rendition on, or the accused's acknowledgment of, his guilt in the past as of one with the court's adjudication upon his future.

The YCA declares that "conviction means the *judgment*". 18 U.S.C. § 5006(d) and (g) (1950). In so doing the section explicitly distinguishes between "judgment" and the modes of ascertaining guilt, by speaking of the judgment *on* them. Until then the guilt pronouncement, as in all criminal cases, is ineffective. The statute does not say that verdict, finding of guilt or plea of guilty amounts to conviction.

These terms were sharply defined in *Berman v. United States*, 302 U.S. 211, 212, 58 S.Ct. 164, 166, 82 L.Ed. 204 (1937), the Chief Justice saying:

"Final judgment in a criminal case means sentence. *The sentence is the judgment.* Here, the imposition of the sentence was not suspended, but only its execution." (Accent added.)

*See Korematsu v. United States*, 319 U.S. 432, 434, 63 S.Ct. 1124, 87 L.Ed. 1497 (1943), to the same effect, but allowing appeal

from a *suspension*, rather than execution, of imposition of sentence only because of the similarity of the impact of each upon the defendant. Congress in enacting the YCA was quite aware of the established meaning of the words it was using. As was said in *Bradley v. United States*, 410 U.S. 605, 609, 93 S.Ct. 1151, 1154, 35 L.Ed.2d 528 (1973):

"Rather than using terms in their every day sense, '[t]he law uses familiar legal expressions in their familiar legal sense.' "

Conclusive presently is the provision in the YCA for disposition of the violation—it terms the disposition a "Sentence", 18 U.S.C. § 5010(b). It unequivocally declares that "[I]f . . . a convicted person is a youth offender . . . the court may . . . sentence the youth offender" for treatment under the Act. This same terminology is adopted in the following sections prescribing what shall be done with the convicted person in the event he proves unfit for treatment. 5010(c) and (d).

Not in the slightest does *Standley v. United States*, 318 F.2d 700, cited in the panel opinion, refute the view of this disagreement. The defendant was 22 years, 10 months of age and the proceeding was under the Young Adult Offenders Act, 18 U.S.C. § 4209, which incorporates the treatment provisions of the YCA. Of course, in doing so it embraces the meaning of "sentence" of the YCA, the wording of which has been noted. But, more, § 4209 itself defines the final order as a "sentence". While the opinion in *Standley* does associate the date of the plea of guilty with the date of his "conviction", this is merely a statement by the way of the author and is not a point in issue. Appellant's primary argument there was that he was too old to be considered under YCA; he had overlooked the Young Adult Offenders Act under which he was sentenced. 18 U.S.C. § 4209. Incidentally, the court in *Standley* quoted the language of § 4209 explicitly terming the imposition a "sentence".

---

* Although I was not a member of the panel, this Court permits a senior judge, notwithstanding, to suggest an in banc rehearing but, under the statute he cannot be granted a vote on the suggestion. 28 U.S.C. § 46; *see*, too, FRAP 35(b). Hence he has no right of traditional dissent but is accorded the privilege of stating of record his disagreement.

Nor can I agree that our decision in *United States v. Bailey*, 509 F.2d 881 (4 Cir. 1975) "is not determinative". While in that case the verdict and sentence did occur on the same day, this is no ground for disregarding *Bailey*. In the opinion we explicitly fixed the day of sentence as the date for ascertaining age. Thus, we said the defendant "was 22 years of age at the time of sentence" and "hence not within the mandates of the Youth Corrections Act." The chronological coincidence of verdict and sentence did not, and could not, play a part in this conclusion.

Nothing in the legislative history disputes this thesis. Indeed, the quotations in the panel opinion from the reports of Congress precisely distinguish between conviction and sentence.

Finally, this case fits snugly into the category which FRAP 35(a) ascribes to an in banc hearing:

"(1) [w]hen consideration by the full court is necessary to secure or maintain uniformity of its decisions, or (2) when the proceeding involves a question of exceptional importance."

The question here is of importance for its relation to uniformity of our decisions, the proposed panel opinion overruling our earlier holding in *United States v. Bailey.*

For these reasons I regret to see the District Court reversed.

WIDENER, Circuit Judge, stating his views separately:

I voted to grant a hearing en banc because of the importance of this case to the administration of criminal justice, and would record that vote here. Despite the unusual aspect of the decision, it has been arrived at without briefing or oral argument.

I agree with Judge Bryan's construction of the statute. Its literal words are clear beyond doubt, and should admit of no statutory history to confuse the precise English used by Congress. Indeed, it is cases such as this which make me wonder whether reference to statutory history should be permitted in any except the most unusual case, if at all. "If the language be clear it is conclusive. There can be no construction when there is nothing to construe." *United States v. Shreveport Grain and Elevator Co.*, 287 U.S. 77, 83, 53 S.Ct. 42, 44, 77 L.Ed. 175 (1932).

The panel, however, I suggest, has come to the correct result *on the facts of this case.* Jenkins was 21 years old at the time of his conviction on June 10, 1971, and was 22 years old at the time sentence was imposed on August 31, 1971. I think it was an abuse of discretion not to at least inquire of him whether he wished the sentencing to take place before or after his birthday, and would require reconsideration of the matter by the district court on that ground alone.

I further note the question has not been discussed as to whether the relief requested is within the scope of # 2255 as opposed to direct review.